IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA D. BAILEY,<br><br>          *Plaintiff,*<br><br>v.<br><br>NELNET STUDENT LOAN SERVICER, et al,<br><br>          *Defendants.* | Civil Action No. 2:22-cv-1311<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    *Pro se* Plaintiff Sandra D. Bailey ("Bailey") brought this lawsuit relating to her federal educational loans against Defendant Nelnet Student Loan Servicer ("Nelnet").[1] Bailey contends that she is the victim of fraud related to the loans published by Nelnet in the Federal Student Aid Loan ("FSLA") Database ("Database"). More specifically, in her amended complaint she claims: (1) that she is only responsible for fourteen loans, but the Database lists seventeen; (2) that the original balance of the loans totals $110,437.00, but is listed in the Database as $168,092.00; and (3) that the loans were used to pay for her graduate education, but are identified in the Database as having been used for undergraduate education. (ECF No. 7, pp. 1-2). She demands that Nelnet return her loans to a value of $110,437.00, that three loans (identified as 15, 16, and 17) be removed from the Database, and that the undergraduate verbiage be removed from the Database. Additionally, Bailey demands that Nelnet pay her "$10,000,000

---

[1] Nelnet represents that Bailey has improperly identified it and its name is "Nelnet Servicing, LLC" (ECF No. 10, p. 1), but it has not sought to amend the caption.

1

dollars (ten million dollars) for the charges of fraud committed against [her] by reporting fraudulent information to Federal Government agencies, regarding [her] federal student loans." (*Id.* at 3). Nelnet filed a Motion (I) to Dismiss First Amended Complaint With Prejudice, or in the alternative, (II) For a More Definite Statement. (ECF No. 10). Briefing is complete and the matter is ripe for adjudication. For the following reasons, Nelnet's Motion (I) to Dismiss First Amended Complaint With Prejudice will be granted.

## I. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is

present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Complaints brought *pro se* are afforded more leeway than those drafted by attorneys. In determining whether to dismiss a complaint brought by a *pro se* litigant, a federal district court is "required to interpret the *pro se* complaint liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Therefore, in keeping with its duty to "construe *pro se* complaints liberally ... [the Court] will consider" additional facts included in Bailey's filings that came after the amended complaint to the extent they are consistent with the allegations in the amended complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

## II. FACTS

Bailey executed no fewer than fourteen federal educational loans, accrued a balance that totaled $110,437.000 at some point, all to finance her graduate education between 2002 and 2006. (ECF No. 7, p. 3). Due to a lack of funding, she withdrew from her PhD program in September 2006. Also, she had "[t]wo Great Lakes FSAL Cancelled 06/25/2006 – never distributed, $0 value, cancelled." (*Id.*). Bailey contends that in "2017 Nelnet acquires my FSAL adds 3 new loans, 15, 16, 17 and changes the value of the loans from $110,437.00 to 168,092.00

3

[. . .]." *Id.* Bailey claims the increase in both numerosity and balance reflected in the Database will improperly increase the amount she is ultimately obligated to pay. (*Id.* at 2). According to Bailey, she has been "trying to resolve the inaccuracies in the FSAL/NSLD since 2017 with Nelnet and the Department of Education – to no avail." *Id.*

### III. ANALYSIS
#### A. Choice of Law

In exercising diversity jurisdiction, a federal court employs the choice of law principles of its forum state to determine which substantive law governs whether a party is entitled to judgment as a matter of law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Here, Bailey failed to identify the law governing the claims in her amended complaint. In litigating its motion, Nelnet proceeded under the assumption that Pennsylvania law applies. (ECF No. 11, p. 5 n.4). Bailey contends that Nebraska law applies since Nelnet resides in Nebraska and is "under the jurisdiction of Nebraska State Law Statute 25-207." (ECF No. 15, p. 5). Nelnet has replied that there is no conflict between Pennsylvania and Nebraska law governing Bailey's claims and, therefore, Pennsylvania law should apply. (ECF No. 25, pp. 2-5). The Court concurs.

When a federal court exercises diversity jurisdiction the conflict of law rules of the forum state apply. Therefore, as the Court sits in Pennsylvania, it will apply Pennsylvania's choice of law rules. Pennsylvania employs a two-step hybrid framework to choice of law questions. Under the first step of this analysis, the Court must determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, *i.e.*, whether a conflict exists. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If the laws of the jurisdictions are the same, "then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.* (emphasis in original). In the absence of a conflict, "the district court sitting

4

in diversity may refer interchangeably to the laws of the states whose laws potentially apply" or "apply the law of the forum." *Huber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) (citing *On Air Entm't Corp. v. Nat'l Indem. Co.,* 210 F.3d 146, 149 (3d Cir. 2000)).

If the laws differ, the Court must examine the interests and policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false," or "unprovided for." *Hammersmith,* 480 F.3d at 230–32. A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *Budget Rent–A–Car Sys. v. Chappell,* 407 F.3d 166, 170 (3d Cir. 2005). When there is a false conflict, the Court must apply the law of the only interested jurisdiction. *Id.* If no jurisdiction's interest would be impaired if its laws were not applied, there is an "unprovided for" conflict and *lex loci delicti* (the law of the place of the wrong) continues to govern. *Id.* at 170.

In contrast, "a 'deeper [choice of law] analysis' is necessary only if *both* jurisdictions' interests would be impaired by the application of the other's laws (*i.e.,* there is a true conflict)." *Hammersmith,* 480 F.3d at 230 (alterations in original); *see also Budget Rent–A–Car Sys.,* 407 F.3d at 170 ("A true conflict exists 'when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied.'") (quoting *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 & n. 15 (3d Cir. 1991)). If a true conflict exists, the Court must "determine which state has the greater interest in the application of its law." *Hammersmith,* 480 F.3d at 231. To this end, the Court must weigh each state's contacts on a "qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Shields v. Consol. Rail Corp.,* 810 F.2d 397, 400 (3d Cir. 1987) (citations omitted).

The United States Court of Appeals for the Third Circuit has held that Pennsylvania choice of law analysis "employs depecage,[2] the principle whereby different states' laws may apply to different issues in a single case." *Taylor v*, 265 F. App'x at 91. Therefore, the Court must separately analyze the law of the potentially interested jurisdictions regarding each of the disputed legal issues.

To redress injuries caused by intentional falsehoods–either false statements or deliberately concealed facts–Pennsylvania recognizes a civil action for fraud. *See Moser v. DeSetta*, 589 A.2d 679, 682 (Pa. 1991) ("The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement."). Common law fraud under Pennsylvania law requires: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Likewise, the elements of fraud in Nebraska are:

> 1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that he or she suffered damage as a result.

*Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 747, 626 N.W.2d 472, 495 (2001), *abrogated on other grounds*.

The Court finds that there is no conflict in the laws of Pennsylvania and Nebraska vis-à-vis the general elements of a common law fraud claim. Because the laws of Pennsylvania and

---

[2] "A French word, *depecage* [ ] is defined as a 'cutting up, dismembering, carving up.'" *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 92, n. 5 (3d Cir. 2008) (citation omitted).

Nebraska are the same with respect to the claims raised by Bailey, there is no conflict—real or false. Because there is no actual conflict, the Court may apply the law of the forum—Pennsylvania—as to Bailey's common law fraud claims. *Hammersmith*, 480 F.3d at 229.

As Nelnet recognizes, the Court's analysis does not end here. (ECF No. 25, p. 10). A federal court exercising diversity jurisdiction must also apply the forum state's choice of law rules regarding statutes of limitations. *See Guaranty Trust Co. of NY v. York*, 326 U.S. 99 (1945); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985). "Pursuant to Pennsylvania's so-called 'borrowing statute,' Pennsylvania applies its own statute of limitations to causes of action that accrued in a foreign jurisdiction, unless the foreign jurisdiction's statute of limitations is shorter." *Hoppe v. SmithKline Beecham Corp.*, 437 F. Supp. 2d 331, 335 (E.D. Pa. 2006) (citing 42 Pa. C.S. § 5521(b)). Pennsylvania's so-called borrowing statute states, "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. C.S. § 5521(b). Thus, Pennsylvania's limitations period applies to the claim unless the foreign jurisdiction's laws, including laws on tolling and the date of accrual, bar the claim first. *See Gwaltney v. Stone*, 564 A.2d 498, 503 (Pa. Super. 1989) ("The provisions of Pennsylvania's borrowing statute unequivocally evince the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose.").

In Pennsylvania, an action proceeding in fraud is governed by a two-year statute of limitations. 42 Pa. C.S. § 5524(7). In Nebraska, "an action for relief on the ground of fraud" must be brought within four years. *See* Neb. Rev. Stat. § 25-207(4). Thus, Pennsylvania's

limitations period is shorter than Nebraska's. Therefore, the clear unambiguous language of Pennsylvania's so-called borrowing statute dictates that Pennsylvania's statute of limitations applies.[3]

### B. Statute of Limitations

Nelnet argues that Bailey's fraud claims are clearly barred by Pennsylvania's statute of limitations. The Court may dismiss a claim if the complaint plainly confirms the claim is barred by the governing statute of limitations. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on the statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."). In other words, when the complaint makes clear when the cause of action accrued, and such date firmly establishes the statute of limitations has run, the Court may dismiss the complaint. "Statutes of limitations are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)).

In Pennsylvania, an action proceeding in fraud is governed by a two-year statute of limitations. 42 Pa. C.S. § 5524(7). The time to file begins running "from the time the cause of action accrued[.]" 42 Pa. C.S. § 5502(a); *see also Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000). The clock "begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[.]" *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa.

---

[3] A different result may well have been achieved had the action been commenced in a state or federal court in Nebraska.

1983) (citations omitted). If a plaintiff fails to file before the clock expires, the statute of limitations bars the suit.

Bailey learned of Nelnet's alleged misrepresentations on the Database and the alleged change in the value of her loans in 2017. Her claims are facially barred as they were filed outside of the two-year statute of limitations. It is her burden to show why the statute should be tolled. Bailey has not explained why–other than she has been attempting to resolve the issue with Nelnet and the Department of Education since 2017–she waited until November 2022 to bring these claims. In her response, Bailey continually states that with Nelnet, she has been attempting to resolve the alleged issues with her loans for five years, and recounts what she has done. (ECF No. 15, pp. 3, 6, 9-10). To the extent Bailey argues that she did not discover until 2022 (after Nelnet responded to requests to investigate her account for identity theft and through the complaints she filed with the Consumer Financial Protection Bureau) that Nelnet "maybe [sic] keeping more than one set of books on Plaintiff's Federal Student Aid Account, which is fraud, and/or gaslighting her into believing that they are not committing fraud," (ECF No. 15, pp. 10 and 13), this is an argument without citation on any actual supporting facts. She cannot assert that she was unaware of Nelnet's alleged misconduct when she has been arguing with Nelnet since 2017 about what she believes to be the issue with her loans and the reporting of them on the Database. Bailey herself admits, "after five years of the Plaintiff continuously notifying Nelnet the Plaintiff's Federal Student Aid Loan Account is incorrect, the wrongful reporting continues." (ECF No. 15, p. 13). The two-year statute of limitations unquestionably bars her fraud claims.

C. **Failure to State a Claim**

Even if Bailey had overcome the statute of limitations, she has failed to state a claim upon which relief may be granted. Bailey asserts the following three claims of fraud dealing with how her loans are reflected on the Database: (1) that she is only responsible for fourteen loans, but the Database lists seventeen; (2) that the original balance of the loans totals $110,437.00, but is listed in the Database as $168,092.00; and (3) that the loans were used to pay for her graduate education, but are identified as having been used for undergraduate education. (ECF No. 7, pp. 1-2). Nelnet argues that the facts alleged by Bailey fail to meet the elements necessary to properly plead a claim of fraud, and it is impossible to reasonably infer from the facts alleged that the allegedly incorrect information on the Database is the product of fraud. (ECF Nos. 11 and 15). Nelnet also contends that Bailey's grievances stem from a basic misunderstanding of how loan accounts are established and interest is capitalized.

As previously noted herein, common law fraud under Pennsylvania law requires Bailey to show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Gibbs*, 647 A.2d at 889. The court finds that none of Bailey's three fraud claims are sufficiently pled.

First, as to Bailey's claim that Nelnet inaccurately reported 17 loans to the Database, the Court finds that she has failed to state a claim upon which relief may be granted. Bailey does not plead that she relied on allegedly false statements on the Database as to the number of her loans to her detriment. She does not identify a concrete injury-in-fact resulting from the purported misrepresentation. Bailey has not pled that she actually made any payments on the three added

loans or that additional interest accrued as result of their existence. Lastly, she has not pled that she is currently making payments on any of the loans, or that Nelnet has taken steps to collect from her on the three added loans. For these reasons, the Court finds that Bailey has failed to state a claim with regard to fraud in the number of loans reported on the Database.

The Court would note that it too shares Nelnet's confusion as to the underlying factual basis of this entire claim. Bailey readily acknowledges that she originally sought to borrow sixteen (16) loans, two (2) of which were cancelled prior to disbursement, and the rest of which were consolidated into a single loan in 2007. (ECF No. 7, p. 3). Between Plaintiff's fourteen (14) original loans, her two (2) cancelled loans, and the single consolidated loan, Bailey would have had seventeen (17) individual loan accounts. The Court has reviewed the documents attached to the complaint originally filed by Bailey on September 15, 2022, and they support such a conclusion. (*See* ECF No. 4-2, p. 3 (identifying one (1) consolidation loan with a balance of $257,826; eight (8) subsidized loans with a balance of $0; and eight (8) unsubsidized loans with a balance of $0)).[4] There is nothing in the record before the Court to support an inference that Nelnet unilaterally increased Bailey's number of loans such that a plausible fraud claim exists.

---

[4] Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule. A district court may consider the following: (1) exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); (2) documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit*, 998 F.2d at 1196; and (3) matters of public record, *Pension Benefit*, 998 F.2d at 1196. For this reason and due to Bailey's *pro se* status, the Court has reviewed and considered the exhibits attached to her Complaint (ECF No. 4) and her Response to Motion to Dismiss or for More Definite Statement (ECF No. 15).

Second, as to Bailey's claim for fraud because the original loan value is $168,192.00 instead of $110,437.00, the Court finds that she has failed to state a claim. Similar to her previous fraud claim, Bailey has not alleged that she relied on the allegedly false statements of value to her detriment, or that she has been injured by the purported misrepresentation. All Bailey pleads is that "[t]he statement the original value of the loan is 168,192.00 instead of 110,437.00 is increasing the value of the gradate [sic] loans and the repayment of those loans." (ECF No. 7, p. 2). But, Bailey has not made any recent payment on the loans, and she has not pled that Nelnet is seeking to have her resume payments on the loans. For these reasons, the Court finds that Bailey has failed to state a claim with regard to the value of the loans reported on the Database.

Lastly, as to Bailey's claim of fraud on account of "[f]alse statement containing material fact—undergraduate verbiage added to the NSLD when the 14 loans are graduate degree loans" (ECF No, p. 2), the Court finds that she has failed to state a claim. Bailey has failed to plead any transaction between herself and Nelnet. Additionally, to the extent that an inaccurate description of how her loans arose is on the Database, the Court finds it is not a material misrepresentation.[5] Bailey has not pled that she relied on the inaccurate description or that it has misled or injured her in any way. While the description of how the loans arose may be improper, it is simply not actionable fraud. Her fraud claim is implausible.

The Court understands that Bailey believes that "by the time the term of the loan ends in 10 years, [she] will be 79 years old and at the rate the interest and compounding interest is

---

[5] "[A] misrepresentation made innocently is not actionable unless it is material, and in such case there must be a right to reliance. A misrepresentation is material when it is of such a character, that if it had not been made the transaction would not have been entered into." *De Joseph v. Zambelli*, 139 A.2d 644, 647 (Pa. 1958) (citation omitted). What allegedly occurred here is not a material misrepresentation.

mounting, the cost of the loan will be $1,000,000.00 plus interest" (ECF No. 15, p. 12), and that she cannot satisfy the loan. While Bailey is of the opinion that she was "swindled" (*Id.* at p. 13), she has failed to set forth any viable claims of common law fraud.

## IV.  CONCLUSION

For the aforementioned reasons, the Court will grant Nelnet's motion and dismiss all claims with prejudice. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__3-2-23_____
Date